Patrick M. Flatley
United States Bankruptcy Judge

Dated: Wednesday, October 30, 2013 4:34:22 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| JOHN ALEXANDER BURGESS and ) | |
| SYLVIA SANTOS CRUZ, ) | Case No. 11-1257 |
| ) | |
| Debtors. ) | Chapter 11 |
| ) | |

## MEMORANDUM OPINION

Pending before the court are three motions: a Motion to Convert Case to Case Under Chapter 7 ("Motion to Convert") filed by Susquehanna Bank ("Susquehanna"), in which Acquired Capital, II, L.P. ("Acquired Capital"), the Office of the United States Trustee ("UST"), and City National Bank of West Virginia ("City National") join; a Renewed Motion for Relief from the Automatic Stay ("Motion for Stay Relief") filed by City National; and the Debtors' Motion to Employ a Realtor. On October 17, 2013, the court held an evidentiary hearing to consider the Motion to Convert.[1] The Debtors appeared at the hearing *pro se* and defended against the Motion to Convert.[2]

For the reasons stated herein, the court will grant the Motion to Convert and convert this case to one under Chapter 7.

## I. BACKGROUND

On July 7, 2011, the Debtors filed their Chapter 11 voluntary petition. As can be seen from

---

[1] Although it was not specifically set for hearing, the court also considered the Motion for Stay Relief given the posture of the case and the history surrounding the property that is the subject of the motion.

[2] The Debtors were represented by counsel through most of their case to date. On September 6, 2013, the Debtors' former counsel moved to withdraw on a mandatory basis for an undisclosed reason. By order dated September 11, 2013, the court permitted counsel's withdrawal.

1

the court's docket, the Debtors' attempt to reorganize has been difficult from the outset. Most of the activity in the case during the first several months involved several secured creditors moving for relief from the automatic stay. Ultimately, the court, in modifying the automatic stay on the Debtors' then-principal residence, ordered the Debtors to, among other things, file a meaningful proposed Chapter 11 disclosure statement and plan of reorganization by November 5, 2012. The Debtors' proposed Chapter 11 disclosure statement and plan went through four iterations before the court finally approved their third amended disclosure statement on May 3, 2013, and the Debtors solicited votes on their proposed plan. On July 23, 2013, the court held a telephonic hearing in which it denied confirmation of the Debtors' third amended proposed plan based upon the Debtors' inability to garner sufficient votes to obtain confirmation. No impaired class accepted the plan as required by 11 U.S.C. § 1129(a)(8); in fact, not a single impaired creditor accepted the plan. During the July 23, 2013 hearing, Susquehanna urged the court to convert the Debtors' case *sua sponte*, but the court indicated it would not convert the Debtors' case without an interested party moving for relief. On July 26, 2013, Susquehanna filed its pending Motion to Convert.[3]

## II. DISCUSSION

Susquehanna urges the court to convert the Debtors' case based primarily upon the continued diminution of the estate and an absence of a likelihood of rehabilitation, and the Debtors' failure to pay real property taxes that accrued postpetition. The Debtors contend that their case should remain in Chapter 11 because they have attempted to work with their creditors in good faith to formulate a feasible Chapter 11 plan, and their problems in that regard stem largely from a strained relationship with their former counsel.

Section 1112(b)(1) of the Bankruptcy Code provides that the court "shall" dismiss or convert

---

[3] The Bankruptcy Code requires that the court "commence the hearing on a motion under [§ 1112(b)] not later than 30 days after the filing of the motion . . . ." 11 U.S.C. § 1112(b)(3). Given the inherent challenges the court faces when scheduling business at its Martinsburg division, it could not set an in-court evidentiary hearing until September 12, 2013. The court, however, commenced a telephonic hearing on August 20, 2013, in order to comply with the provisions of § 1112(b)(3), with the evidentiary portion of the hearing to begin on September 12, 2013. The court ultimately continued the evidentiary portion of the hearing to October 17, 2013, after counsel for the Debtors withdrew just days before the evidentiary hearing, *see supra* note 2, because the court wanted to afford the Debtors an opportunity to retain substitute counsel or otherwise protect their interests.

2

a case under Chapter 11, whichever is in the best interest of creditors, if a movant establishes "cause." 11 U.S.C. § 1112(b)(1). Section 1112(b) contains a burden-shifting mechanism. The movant bears the initial burden to establish "cause" under § 1112(b). *In re Ashley Oaks Development Corp.*, 458 B.R. 280, 283 (Bankr. D.S.C. 2011). Once a movant establishes "cause," the debtor generally "is able to show that unusual circumstances exist such that dismissal is not in the best interest of creditors." *In re Quail Farm, LLC*, No. 09-bk-298, 2010 WL 1849867, at *2 (Bankr. N.D.W. Va. May 5, 2010) (citation omitted).

Here, the court announced on the record after the conclusion of Susquehanna's case-in-chief that cause existed to convert the case. The court first found cause based upon the Debtors' inability to effectuate a confirmable Chapter 11 plan of reorganization. *See In re Ramreddy, Inc.*, 440 B.R. 103, 113 n.26 (Bankr. E.D.Pa. 2009) (citation omitted) (noting that the inability to propose a feasible plan of reorganization, by itself, constitutes cause for conversion). The court also found cause under § 1112(b)(4)(A) based upon the continued diminution of the estate in the absence of a reasonable likelihood of rehabilitation.

The probability that the Debtors can formulate a confirmable plan of reorganization is slim at best. The Debtors filed their case on July 7, 2011. Even when they had counsel, the Debtors did not file a proposed Chapter 11 disclosure statement and plan of reorganization until November 5, 2012, and then did so only because the court ordered that they do so. Creditors of the Debtors' estate lodged a multitude of objections against the proposed disclosure statement and plan, which went through four iterations before the court finally approved their third amended disclosure statement on May 3, 2013. Ultimately, the creditors blocked confirmation of the Debtors' third amended proposed plan of reorganization. On July 23, 2013, the court held a telephonic hearing in which it denied confirmation of the Debtors' third amended proposed plan based upon the Debtors inability to garner sufficient votes to obtain confirmation. No impaired class accepted the plan as required by 11 U.S.C. § 1129(a)(8); in fact, not a single impaired creditor accepted the plan. In sum, the Debtors tested the confirmation process with a fully formed proposed plan and were unable to garner any votes from impaired creditors. Moreover, Susquehanna and City National hold sizeable unsecured claims against the Debtors' estate and present a significant, if not insurmountable,

3

impediment to confirmation.[4]  The court thus finds it appropriate to grant relief to Susquehanna.  *See DCNC North Carolina I, L.L.C. v. Wachovia Bank, N.A.*, Civil Action Nos. 09-3775, 09-3776, 2009 WL 3209728, at *5 (E.D. Pa. Oct. 5, 2009) ("If it becomes reasonably apparent that the debtor cannot obtain the favorable vote of at least one class of impaired claims with respect to any plan that the debtor might reasonably propose, there is no point in incurring the cost of the plan process and cause exists to dismiss or convert the case.").

Regarding cause under § 1112(b)(4)(A), the court first looks at whether a debtor has negative cash flow or declining asset values; if so, the court considers whether the debtor will be able to "stop the bleeding" and return to solid financial footing within a reasonable amount of time.  *See* 7 *Collier on Bankruptcy* ¶ 1112.04 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  Here, the court found that the value of the estate continues to diminish in the absence of a reasonable likelihood of rehabilitation.  The Debtors have made no payments to Acquired Capital or priority tax creditors during the pendency of their case.  Acquired Capital's claim against the Debtors is secured by deeds of trust on two parcels of real property that the Debtors presently consider to be most important to their reorganization: their residence and the condominium building that houses their professional offices.  The Debtors' failure in this regard is significant.  It evidences the Debtors' lack of financial wherewithal to make their on-going payments, and it makes any conceivable rehabilitation that much more difficult as arrearages — which must be paid in a Chapter 11 reorganization if the property is to be retained — accumulate.  In addition to not making regular monthly payments on their secured debt obligations, the Debtors have also failed to pay real property taxes as they come due; the Debtors have allowed taxes to accrue without regard to whether they intend to retain or sell the property, or whether the property is encumbered.  The accrual of real property taxes dating back to 2010 is harmful in two significant ways: The value of otherwise unencumbered real property available for liquidation and distribution to unsecured creditors continues to decline as real property taxes accrue; and the accrual of real property taxes jeopardizes the Debtors ownership of the parcels, the tax liens on which may ultimately be sold.  In sum, the Debtors' failure to pay their monthly

---

[4] To be clear, City National filed its proof of claim as "secured" in the amount of $1,015,133.17.  During this case, however, it has become apparent that the value of the property securing City National's claim is substantially less than the amount City National is owed.  Thus, if City National were to foreclose, it would be left with a significant unsecured deficiency claim.

secured debt obligations and real property taxes constitute a continued diminution of the estate as encumbrances on their real property continue to accrue and otherwise endanger their ownership interest therein. *See Canpartners Realty Holding Co. IV, L.L.C. v. Vallambrosa Holdings, L.L.C. (In re Vallambrosa Holdings, L.L.C.)*, 419 B.R. 81, 88-89 (Bankr. S.D.Ga. 2009) (citing *In re Avis*, No. 07-13483-SSM, 2008 WL 5786807, at *2 (Bankr. E.D.Va. Nov. 13, 2008)) (finding a diminution of the estate where equity in real property eroded based upon the accrual of unpaid arrearages). Moreover, although "rehabilitation" is not another word for reorganization, the analysis in that regard under § 1112(b)(4)(A) focuses on whether continuing the reorganization effort is justified under the circumstances. Here, the court finds that continuing the reorganization effort is not justified given the length of time since the Debtors filed their case and the continued accrual of secured debt arrearages and real property tax obligations.

The court having found cause, the burden shifted to the Debtors to show that unusual circumstances existed under § 1112(b)(2) such that conversion or dismissal is not in the best interest of creditors and the estate. The court noted, however, before the Debtors commenced their presentation, that the "unusual circumstances" defense may be unavailable to them based upon its finding of "cause" under § 1112(b)(4)(A). The court explained that a split of authority exists regarding the availability of the "unusual circumstances" defense when a court finds "cause" under § 1112(b)(4)(A). Nonetheless, the court heard from the Debtors in that regard because it did not have sufficient time to then decide whether the defense was available to the Debtors; and given the court's schedule, it explained that it was not then ruling upon the issue but simply receiving the evidence in that regard. Having considered the legal authority regarding the "unusual circumstances" defense under § 1112(b)(2), the court finds that it is unavailable here. Put simply, "if cause is established by virtue of § 1112(b)(4)(A), then the provisions of § 1112(b)(2) do not apply." *In re Quail Farm, LLC*, 2010 WL 1849867, at *2 (Bankr. N.D.W. Va. May 5, 2010); *see In re Ashley Oaks Development Corp.*, 458 B.R. at 284-85; *In re Ramreddy, Inc.*, 440 B.R. at 112-13 (citation omitted).

Although the court finds it unnecessary to apply the provisions of § 1112(b)(2) as part of its decision given its findings of cause under § 1112(b)(1), including under subparagraph (b)(4)(A), it acknowledges the Debtors' attempt to demonstrate that "unusual circumstances" justify denying the motion to convert. In that regard, the Debtors primarily rely upon the evidence they adduced

suggesting that their inability to formulate a confirmable plan and pay down some of their accruing secured and priority debt obligations was the result of miscommunications with, or neglect by, their former legal counsel and the refusal of one or more creditors to deal with them directly since they were represented by an attorney, involved in a bankruptcy case, or both.  Further, the Debtors offered a one-page outline of terms that they believe could serve as the backbone of a reorganization plan.  However, as noted, it is not necessary to consider the Debtors assertions regarding the existence of unusual circumstances and the court, therefore, makes no specific findings pertaining to them.

Having found cause for relief under § 1112(b), the court is left with the choice to convert or dismiss the case, whichever is in the best interest of creditors.  Here, Susquehanna moved for conversion, and the court finds that conversion is in the best interest of creditors because the Debtors appear to have equity in several parcels of real property that can be liquidated with the proceeds distributed to unsecured creditors, absent validly asserted exemptions.  The court will thus convert this case to one under Chapter 7.

Regarding City National's Motion for Stay Relief, the court will grant it relief from the automatic stay so that it may pursue its rights at state law.  City National seeks relief from the automatic stay with regard to the Debtors' former residence known as Lot 129, Section III, Round Top Estates Subdivision (the "Property").  Although the court deferred the motion at its October 17, 2013 evidentiary hearing, it finds that further proceedings are unnecessary.  The clerk's office provided notice of City National's motion to interested parties, including the Debtors.  The deadline for written objections expired on October 17, 2013, the date of the evidentiary hearing.  But for the fact that the Debtors are *pro se* and the court already had Susquehanna's Motion to Convert set for hearing, the court likely would have entered an order granting stay relief to City National because no interested party filed a written objection to the Motion for Stay Relief.  In fact, the Debtors did not challenge the Motion for Stay Relief at the October 17, 2013 hearing but simply stated an interest in working with City National to market the Property in an effort to reduce the amount of the anticipated deficiency judgment.  Moreover, the Debtors agree no equity exists in the Property, and the Property is not necessary for an effective reorganization; even if this case remained in Chapter 11, the Debtors' most recent proposed Chapter 11 plan — which they filed May 3, 2013 — contemplates surrendering the Property.  The court will thus grant City National's Motion for Stay

6

Relief.

## III.  CONCLUSION

For the above-stated reasons, the court will enter a separate order that grants Susquehanna's Motion to Convert and City National's Motion for Stay Relief.  Because the court will convert this case to one under Chapter 7, it will deny as moot the Debtors' Motion to Employ a Realtor.